**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 16 2013, 7:01 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CHRISTOPHER A. CAGE**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JERAMIE MURDOCK, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 48A02-1210-CR-880 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Thomas Newman, Jr., Judge
Cause No. 48C03-1207-FB-1285

**July 16, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Jeramie Murdock appeals his convictions and sentence for Class B felony dealing in methamphetamine, Class D felony possession of methamphetamine, and Class D felony maintaining a common nuisance. We affirm.

**Issues**

The issues before the court are:

I. whether the trial court properly admitted evidence that was collected from Murdock's trashcan without a warrant;

II. whether the trial court properly admitted evidence that was gathered inside Murdock's residence following an entry without a warrant; and

III. whether Murdock's sentence is inappropriate.

**Facts**

On July 9, 2012, officers were dispatched to 914 East 21st Street in Anderson in response to an anonymous phone call that someone was manufacturing methamphetamine. Upon arrival, Officer Jacob Lewis, along with two other officers from the Anderson Police Department, walked up to the front door and could smell "the chemical odors" that are known to be associated with methamphetamine, based on their training and experience. Tr. p. 13. Officer Lewis knocked on the door and saw a light in the south window turn off immediately. The officers contacted the Madison County Drug Task Force ("Task Force") and secured the home from the outside until their arrival. The Task Force officers have undergone extensive training in dealing with

methamphetamine labs and are knowledgeable about the hazards associated with manufacturing methamphetamine.

Task Force officers arrived and noticed the same chemical odors. The officers saw a trashcan located near the south part of the residence placed as though it was ready for trash collection. They opened the lid to determine whether the odors were originating there. The officers determined the odors were not emanating from the trash, but they did find precursors for manufacturing methamphetamine. The officers knocked on the door and the window several times more without any response. They then entered the home because of a risk of an explosion caused by attempting to dispose of methamphetamine or an exposure of gasses from manufacturing methamphetamine that could cause respiratory issues.

The officers found Murdock inside and observed several precursors to methamphetamine, such as a Coleman fuel can and a plastic container with organic solvent. They then applied for and received a search warrant and subsequently recovered digital scales, a pill bottle, containers of salt, empty Sudafed blister packs, and a two-liter plastic bottle containing ammonium nitrate, sodium hydroxide, and organic solvent hidden in a toilet's tank.

Murdock was placed under arrest and charged with Class B felony dealing in methamphetamine, Class D felony possession of methamphetamine, Class D felony possession of chemical reagents or precursors with intent to manufacture a controlled substance, and Class D felony maintaining a common nuisance. The court eventually dismissed the Class D Felony possession of chemical reagents or precursors charge.

Murdock filed a motion to suppress evidence seized during the warrantless search and seizure. This motion was denied on September 5, 2012, and Murdock filed a motion to certify an interlocutory appeal, which was also denied. On October 1, 2012, a jury found Murdock guilty on the three remaining counts. Murdock was sentenced to twenty years on the Class B felony dealing in methamphetamine conviction and three years each on the Class D felony possession of methamphetamine and Class D felony maintaining a common nuisance convictions, to run concurrently for a total of twenty years executed. Murdock now appeals.

**Analysis**

*I. Search and Seizure*

On appeal, we determine whether the trial court abused its discretion when it admitted evidence obtained without a warrant. Questions regarding the admission of evidence are left to the sound discretion of the trial court and, on appeal, we review the court's decision only for an abuse of that discretion. Fuqua v. State, 984 N.E.2d 709, 713 (Ind. Ct. App. 2013) trans. denied. We determine whether substantial evidence of probative value exists to support the trial court's ruling. Litchfield v. State, 824 N.E.2d 356, 358 (Ind. 2005). We do not reweigh the evidence and we consider conflicting evidence most favorable to the trial court's ruling. Id. "[U]nlike the typical sufficiency of the evidence case where only the evidence favorable to the judgment is considered, we must also consider the uncontested evidence favorable to the defendant." Kelley v. State, 825 N.E.2d 420, 424 (Ind. Ct. App. 2005). Trial courts have broad discretion regarding the admissibility of evidence. Id.

4

Murdock alleges two constitutional claims. He first claims a violation of the Indiana Constitution regarding evidence obtained from his trashcan without a search warrant. He next claims a violation to his Fourth Amendment rights regarding the seizure of evidence from the warrantless entry of his home.

### A. The Trash Search

Murdock claims that the search of his trash without a warrant violated the Indiana Constitution. Article I, Section 11 of the Indiana Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

Although the search and seizure provision of the Indiana Constitution tracks the Fourth Amendment verbatim, our jurisprudence has focused on whether the actions of the government were "reasonable" under the "totality of the circumstances" and not whether there was an expectation of privacy. Fuqua, 984 N.E.2d at 714 (quoting Litchfield, 824 N.E.2d at 359). The reasonableness of a search or seizure turns on a balancing of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred; 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities; and 3) the extent of law enforcement needs. Litchfield, 824 N.E.2d at 361.

Murdock claims that his trashcan was located in the immediate area of the garage and that the officers encroached upon the curtilage of his home when they entered the backyard without a warrant. Murdock argues that curtilage is defined on a case-by-case

5

basis and is dependent on a person's expectation of privacy.[1]  However, Article I, Section

11 of the Indiana Constitution focuses on reasonableness, not expectations of privacy.

"[T]he reasonableness of an officer conduct in searching a citizen's trash does not turn on

whether or not the police entered onto the citizen's property.  Property lines are irrelevant

to the degree of suspicion of a violation . . . ."  Id.  Instead, the court recognizes a two-

step analysis to determine if the trash is searchable:

> First, the "trash must be retrieved in substantially the same
> manner as the trash collector would take it." Second, the
> search must be based on an "articulable individualized
> suspicion that illegal activity is or has been taking place,
> essentially the same as is required for a 'Terry stop' of an
> automobile."

Fuqua, 984 N.E.2d at 714 (citations omitted).

The facts most favorable to the decision indicate that officers believed the trash

was abandoned in a manner consistent with that of someone disposing of it for trash

collection.  To the extent that Murdock argues otherwise, he is improperly asking us to

reweigh the evidence.  Further, the anonymous tip that led law enforcement to the

residence and the chemical odors were sufficient factors to indicate that the officers, who

were trained to recognize the smell of and deal with methamphetamine and were aware of

its dangers, had reasonable suspicion to look inside the trashcan.  They reasonably

---

[1] Murdock seems to make a separate argument under the Fourth Amendment regarding the officers' entry onto his curtilage and a sniff of the downstairs window of his home.  A warrantless entry of the curtilage is permitted under the Fourth Amendment when exigent circumstances exist. Holder v. State, 847 N.E.2d 930, 936 (Ind. 2006).  The officers in Holder could smell an ether odor associated with methamphetamine from a far distance, and they were justified to enter the curtilage because of the significant smell of fumes and flammable chemicals that posed a danger to others. Id.  The same is true here.

6

believed that the chemical odors could be coming from the trashcan, located near the south part of the residence, therefore, justifying a search of the trash.

### B. Entry to the Residence

Murdock also alleges that a warrant was required for the police to enter his home. Under the Fourth Amendment, a search without a warrant requires the State to prove an exception to the warrant requirement applicable at the time of the search. Holder, 847 N.E.2d at 935 (quoting White v. State, 772 N.E.2d 408, 411 (Ind. 2002)). "However, there are exceptions to the warrant requirement, such as when exigent circumstances exist." State v. Crabb, 835 N.E.2d 1068, 1070 (Ind. Ct. App. 2005). Two exigent circumstances include "threats to the lives and safety of officers and others and the imminent destruction of evidence." Holder, 847 N.E.2d at 937 (citing Minnesota v. Olson, 495 U.S. 91, 100, 110 S. Ct. 1684, 1690, (1990)).

Murdock argues that the officers "could [not] have reasonably believed that [Murdock] or any other person was actually in any immediate danger or in need of emergency aid." Appellant's Br. p. 15. He further contends that the officers did not have probable cause to enter the home. We disagree. The officers were aware of a potential methamphetamine lab based on an anonymous phone call they received, the strong chemical odors that were present when they arrived, and the precursors found in the trashcan. The officers knocked on the door and window several times and observed a light in the residence turn off. This could lead an officer to reasonably believe that, given the dangers associated with methamphetamine, someone inside the home was in need of immediate assistance. Officer Jason Brizendine testified that they made the immediate

7

decision to enter "[f]or the safety of anybody inside the residence and also for the safety of everybody within the area of the residence." Tr. p. 321. The house was located in a residential area where other people nearby could be in danger.

Murdock cites Crabb, 835 N.E.2d at 1068, and Holder, 847 N.E.2d at 930, and claims his circumstances differ from these cases. In Crabb, the police were investigating an odor of ether emanating from an apartment where, officers believed, a child was living; after finding precursors outside in a cooler, they made entry into the apartment without a warrant. In Holder, which relies in part on Crabb, police officers were justified to enter the defendant's home without a warrant when told by the defendant that a small child and two other adults were inside the home, in addition to being able to smell the fumes of methamphetamine emanating from his house. We do not believe Holder intended to limit its holding to only when small children are at risk under similar circumstances. Rather, the court indicated that a threat to the lives of others, including the officers, is generally sufficient to justify a warrantless entry. Id. at 937. The officers were justified in entering Murdock's residence without a warrant when they reasonably believed that someone was manufacturing methamphetamine inside the home and someone inside could potentially be in danger, whether it be a child or not. Likewise, the risk of explosion threatened the safety of others in the neighborhood. This justified the warrantless entry into Murdock's home.[2]

---

[2] Murdock also argues that circumstances did not demonstrate a reasonable belief that someone inside the home was destroying evidence. However, we need not address this issue because the evidence most favorable to the decision indicates that the officers were justified to enter the residence due to the risk of harm that manufacturing methamphetamine posed to others.

## *II. Inappropriate Sentence*

We now assess whether Murdock's sentence is inappropriate under Indiana Appellate Rule 7(B) in light of his character and the nature of the offense. See Anglemyer v. State, 868 N.E.2d 482, 491 (Ind. 2007). Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. Id. "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." Id.

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest – the aggregate sentence – rather than the trees – consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id. Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. Id. at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010).

We first determine whether Murdock's sentence is inappropriate based on the nature of the offense. Murdock contends that the facts of this case did not involve any more risk to himself or other persons than any other methamphetamine lab, and states that no other person was present. Murdock fails to acknowledge the extreme risk of harm he placed on others when he was manufacturing methamphetamine. The officers testified about the various dangers of mixing the chemicals to make methamphetamine, including the risk of explosion and health consequences from the exposure of the chemical reagents. Murdock's home was located in a residential neighborhood, which created a risk of harm to those located nearby, including the police officers.

Murdock disputes the court's reliance on his prior criminal history as the single aggravating factor to his character. He argues that his prior offenses do not make him "among the worst of the worst offenders." Appellant's Br. p. 21. However, "[w]e concentrate less on comparing the facts of this case to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character." Wells v. State, 904 N.E.2d 265, 274 (Ind. Ct. App. 2009). Murdock has a lengthy criminal history that includes twenty-one entries in his juvenile record and various misdemeanor and felony convictions. He has previously been placed on probation, on in home detention, and on work release, and had violated each restriction. The presentence investigation report places him at a high risk to reoffend. Therefore, his prior criminal history reflects poorly on his character.

Also, Murdock incorrectly argues that the trial court imposed the maximum sentence of twenty years for Count I and three years for Counts II and III to run consecutively. The court sentenced Murdock to twenty years for Count I and three years for Counts II and III to run <u>concurrently</u> for a total of twenty years, hence not imposing the maximum sentence. He further contends that his pending charges on an unrelated matter should not have been taken into account. Even ignoring those charges, Murdock's criminal history is extensive. Murdock's sentence was appropriate.

## Conclusion

The evidence most favorable to the decision supports the admission of evidence obtained during a warrantless search of the trashcan and police entry to his home without a warrant. Murdock placed others in danger when he was manufacturing methamphetamine and has a significant criminal history; both factors are sufficient to hold that his sentence is not inappropriate. We affirm.

Affirmed.

NAJAM, J., and BAILEY, J., concur.