## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 27 2015, 9:21 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Jill M. Acklin<br>McGrath, LLC<br>Carmel, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>Katherine Modesitt Cooper<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kenneth L. Kemp, Jr.,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | February 27, 2015<br><br>Court of Appeals Case No.<br>48A02-1404-CR-254<br><br>Appeal from the Madison Circuit Court<br><br>The Honorable Dennis D. Carroll, Judge<br><br>Cause No. 48C06-1210-FB-1988 |

**Mathias, Judge.**

[1] Following a jury trial, Kenneth L. Kemp, Jr., ("Kemp") was convicted in Madison Circuit Court of two counts of Class D felony dealing in marijuana and one count of Class D felony maintaining a common nuisance. Kemp appeals and claims that the trial court erred in admitting into evidence cash and

marijuana that was discovered during the stop of his vehicle and the subsequent search of the car and Kemp's person, all of which Kemp argues violated his right to be free from unreasonable searches and seizures.

We affirm.

## Facts and Procedural History

In October 2012, detectives from the Delaware County Sheriff's Department were investigating a homicide. To assist in their investigation, they requested the assistance of Sergeant Frank Sigler ("Sigler") of the Madison County Drug Task Force. Sigler organized members of the Task Force to observe two locations in Delaware County where they believed the suspects of the murder investigation might be located. During surveillance of one of these locations, the police saw a vehicle at Kemp's house that matched the description of a vehicle used by one of the murder suspects. The police also noticed two cars back into Kemp's driveway in close proximity to one another, as if one car was being used to block the view of the other vehicle. At one point, there were approximately four cars parked in the driveway. The police thought that this pattern of vehicular traffic was consistent with that of illicit drugs sales.

As they continued to observe the home, the police saw a black minivan drive away from Kemp's house with an individual who matched the description of one of the murder suspects. The police pulled the minivan over to ascertain if the suspect was in the vehicle. When the occupants of the vehicle did not match the identity of the homicide suspect, they were allowed to leave.

[5] Shortly thereafter, another vehicle, a black Chevrolet Impala, arrived at Kemp's home and quickly left. The police also pulled this car over to see if the murder suspects were in the vehicle. As the police approached the car, they detected the strong odor of raw marijuana and saw a trash bag behind the passenger's seat. Based on the odor of marijuana, the police searched the car and found that the trash bag contained two gallon-sized plastic bags of marijuana. Also, what appeared to be blood stains were on the pants and shoes of the driver of this car, Deondre Turner ("Turner"). Turner declined to cooperate with the police and was arrested for possession of marijuana. Based upon the evidence seized from Turner's car, the police contacted the county prosecutor's office to obtain a search warrant for Kemp's home.

[6] Before the search warrant was obtained, the police observed another vehicle, a Ford truck, back into Kemp's driveway. One of the undercover officers approached the driveway on foot, where he saw Kemp and the driver of the truck, later identified as Kelsie Smith ("Smith") load brown plastic grocery bags into the truck. Smith then drove the truck away from Kemp's residence to his home as the police followed him. After Smith pulled into his driveway, the police pulled in behind him and approached the truck. Smith exited the truck and immediately informed Elwood Police Captain Jason Brizendine ("Capt. Brizendine") that a firearm and marijuana were in the vehicle. Apparently without even being asked, Smith also told the police that he had purchased two pounds of marijuana from Kemp. A search of Smith's truck revealed the marijuana and a firearm.

[7] Before the officers had time to execute the search warrant, Kemp left his house in his vehicle. The police decided to stop Kemp's vehicle. After he stopped, Kemp exited his vehicle, at which time the police detected the strong smell of marijuana. Capt. Brizendine conducted a pat-down search of Kemp's person and felt a hard object in Kemp's groin. Capt. Brizendine began to retrieve the object, but before he could, Kemp reached into his pants and pulled the object, a tightly-packed roll of cash, from his pants and handed it to Capt. Brizendine. The cash totaled $5,000. Kemp was placed under arrest for dealing in marijuana, and a subsequent, more thorough search revealed an additional $995 in cash in Kemp's pants pocket. When the police discovered this money, Kemp interjected, "That ain't no drug money or nothing." Tr. p. 431. A search of Kemp's vehicle incident to the arrest revealed a duffle bag behind the passenger seat that contained a small amount of loose marijuana.

[8] The State subsequently charged Kemp with Class B felony possession of a firearm by a serious violent felon, two counts of Class D felony dealing in marijuana, Class D felony possession of marijuana, Class D felony maintaining a common nuisance, and Class A misdemeanor possession of marijuana; the State also alleged that Kemp was an habitual substance offender.

[9] Kemp filed a motion to suppress on February 22, 2013, claiming that the evidence discovered during the traffic stop and subsequent search of his person and vehicle was the result of an unconstitutional search and seizure. The trial court held a suppression hearing on March 15, 2013, and entered an order denying Kemp's motion on May 8, 2013.

On March 7, a bifurcated jury trial began. During the first phase of the trial, the jury found Kemp guilty of two counts of Class D felony dealing in marijuana, Class D felony maintaining a common nuisance, and Class A misdemeanor possession of marijuana. During the second phase of the trial, the jury acquitted Kemp of possession of a handgun by a serious violent felon. Kemp then pleaded guilty to the habitual substance offender allegation.

The trial court held a sentencing hearing on April 7, 2013, at which time the State moved to dismiss the remaining charge of Class D felony possession of marijuana, and the trial court declined to enter judgment on the misdemeanor possession verdict. The trial court imposed two concurrent three-year sentences on the Class D felony dealing convictions and a one-year sentence on the Class D felony maintaining a common nuisance conviction, to be served consecutive to the three-year sentences. The trial court also enhanced Kemp's sentence by four years as an habitual substance offender. Thus, Kemp received an aggregate sentence of eight years. Kemp now appeals.

## I. Waiver

Before addressing the merits of Kemp's claims, we first consider the State's argument that Kemp did not properly preserve his current argument for purposes of appellate review. Kemp filed a pre-trial motion to suppress the evidence found during the search of his vehicle and person, claiming that it violated his right to be free from unreasonable searches and seizures under both Article 1, Section 11 of the Indiana Constitution and the Fourth Amendment to the United States Constitution. After the trial court denied this motion, Kemp's

counsel objected to evidence found during the search at trial and requested a continuing objection. The trial court granted this request, noting Kemp's continuing objection to "any evidence that relates to [the] search and seizure" and that Kemp "does not have an obligation to continually raise that issue and the arguments are those which were previously asserted and fully briefed at a prior time." Tr. p. 359.

[13] As we explained in some detail in *Hayworth v. State*, 904 N.E.2d 684, 691-92 (Ind. Ct. App. 2009), Indiana recognizes the validity and utility of continuing objections. Here, Kemp properly obtained a continuing objection. However, when the State moved to admit certain evidence seized during the search — the cash found on Kemp and the marijuana found in Kemp's vehicle — Kemp's counsel specifically stated "no objection." Tr. pp. 581-83, 647. By stating affirmatively that he had "no objection," Kemp waived his continuing objection to this evidence. *See Hayworth*, 904 N.E.2d at 693-94 (holding that, assuming that trial court granted defendant's request for a continuing objection, defendant waived the objection by affirmatively stating "no objection" when the evidence was proffered). Instead, the proper procedure in such a situation is to remain silent, not state that there is "no objection" to the evidence. *Id*. at 694. Still, because we prefer to consider the parties' arguments on the merits, we will address Kemp's arguments.

# II. Warrantless Search of Kemp and His Vehicle

## A. Standard of Review

[14] When a defendant challenges the propriety of a search following a completed trial, the issue is one of whether the trial court properly admitted the evidence. *Casady v. State*, 934 N.E.2d 1181, 1188 (Ind. Ct. App. 2010). Questions regarding the admission of evidence are left to the sound discretion of the trial court, and we review the court's decision on appeal only for an abuse of that discretion. *Fuqua v. State*, 984 N.E.2d 709, 713-14 (Ind. Ct. App. 2013), *trans. denied*. The trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before it, or if the court has misinterpreted the law. *Id*. Whether the challenge is made through a pretrial motion to suppress or by an objection at trial, our review of rulings on the admissibility of evidence is essentially the same: we do not reweigh the evidence, and we consider conflicting evidence in a light most favorable to the trial court's ruling, but we may also consider any undisputed evidence that is favorable to the defendant. *Id*.

## B. The Fourth Amendment

[15] Kemp argues that the search of his person and vehicle violated his right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States Constitution. The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures[.]" U.S. Const. Amend. IV. These protections against unreasonable governmental searches and seizures

are a principal mode of discouraging lawless police conduct. *Friend v. State*, 858 N.E.2d 646, 650 (Ind. Ct. App. 2006) (citing *Jones v. State*, 655 N.E.2d 49, 54 (Ind. 1995); *Terry v. Ohio*, 392 U.S. 1, 12 (1968)). If the police conduct a warrantless search, the State bears the burden of establishing that an exception to the warrant requirement is applicable. *Id.*

[16] Kemp argues that the existence of a warrant to search his home cannot justify a search of his car, citing *Bailey v. United States*, 133 S. Ct. 1031 (2013). *Bailey* held that [o]nce an individual has left the immediate vicinity of a premises to be searched . . . detentions must be justified by some . . . rationale" other than the warrant to search the premises. *Id.* at 1043. Here, we believe some rationale existed other than the existence of the warrant to search Kemp's house; specifically, the existence of probable cause to arrest Kemp for possession of, and dealing in, marijuana.

[17] An officer has probable cause to arrest when, at the time of the arrest, that officer has knowledge of facts and circumstances that would warrant a reasonable person to believe that the suspect has committed the criminal act in question. *Clark v. State*, 808 N.E.2d 1183, 1192 (Ind. 2004); *see also Kelly v. State*, 997 N.E.2d 1045, 1051 (Ind. 2013) (noting that an officer may arrest a person if he has knowledge of facts and circumstances that would warrant a man of reasonable caution to believe that the defendant committed the criminal act in question). The amount of evidence necessary to meet the probable cause requirement is determined on a case-by-case basis. *Clark*, 808 N.E.2d at 1192. This determination is grounded in notions of common sense, not mathematical

precision. *Clark*, 808 N.E.2d at 1192. The existence of probable cause is a fact-sensitive determination. *Kelly*, 997 N.E.2d at 1051. It is irrelevant whether the police subjectively believed that probable cause existed. *VanPelt v. State*, 760 N.E.2d 218, 223 (Ind. Ct. App. 2001).

[18] Here, the police observed vehicular traffic at Kemp's residence that was consistent with dealing in illicit drugs. The police discovered a large amount of marijuana in Turner's vehicle shortly after he left Kemp's residence. An officer saw Kemp and another man load two plastic grocery bags in Smith's truck. When approached by the police, Smith admitted that he had marijuana in his truck, and he stated that he had just purchased the marijuana from Kemp. Even though Smith was caught "red handed," and his statements were therefore not entirely against his penal interest, his statements were corroborated by the traffic at Kemp's house, the activity seen by the police, and the marijuana found in Turner's vehicle. *Cf. State v. Spillers*, 847 N.E.2d 949, 955-56 (Ind. 2006) (noting that statement of individual caught "red handed" is not truly against his penal interest and is more likely an effort to curry favor with the police, but also noting that informant's statements were uncorroborated). Based on these facts and circumstances, the trial court could reasonably conclude that the police had probable cause to stop Kemp's car and arrest him for possession of and dealing in marijuana.

[19] Because the police had probable cause to arrest Kemp for possession of and dealing in marijuana, they also had the authority to search Kemp's person incident to his arrest. *See Richard v. State*, 7 N.E.3d 347, 349 (Ind. Ct. App.

2014) (noting that one exception to warrant requirement is a search incident to lawful arrest), *trans. denied*. With regard to the small amount of loose marijuana found in Kemp's vehicle, the police testified that Kemp's car had a strong odor of marijuana about it, thus giving them separate probable cause to search the vehicle. *See Bell v. State*, 13 N.E.3d 543, 546 (Ind. Ct. App. 2014) (noting that smell of either burnt or raw marijuana is sufficient to provide probable cause), *trans. denied*.

## Conclusion

[20] The trial court did not err in admitting into evidence the cash and marijuana that was discovered on Kemp during the search of his person following the stop of his vehicle. The facts and circumstances known to the police at the time they initiated the stop of Kemp's vehicle was sufficient to establish probable cause to arrest Kemp for possession of and dealing in marijuana. Therefore, the search of Kemp's person was justified as a search incident to lawful arrest. Additionally, the smell of marijuana emanating from Kemp's vehicle gave the police probable cause to search the vehicle, and in the vehicle they found a duffle bag containing a small amount of loose marijuana. Accordingly, we affirm the judgment of the trial court.

[21] Affirmed.

Najam, J., and Bradford, J., concur.