# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 10 2019, 10:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James Harper
Harper & Harper, LLC
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Timothy Haigh,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | December 10, 2019<br><br>Court of Appeals Case No.<br>19A-CR-204<br><br>Appeal from the La Porte Circuit Court<br><br>The Honorable Thomas Alevizos, Judge<br><br>Trial Court Cause No.<br>46C01-1710-F1-958 |

**Bradford, Judge.**

# Case Summary

[1] Timothy Haigh appeals his convictions for two counts of Level 1 felony child molesting and one count of Level 4 felony child molesting. Haigh contends that the trial court abused its discretion in admitting (1) an uncertified copy of a document purporting to be his driver's license and (2) repeated references to the victim's initial disclosure of molestation. We affirm.

# Facts and Procedural History

[2] Haigh and Joseph H. had been friends since they met at college in 2005. Haigh "was a very good friend" who "was basically part of the family." Tr. Vol. II p. 64. He served as the best man at Joseph's wedding to Jennifer, was a "pseudo brother" to Joseph, and "a favorite uncle" to Joseph's and Jennifer's sons, A.H. and M.H. Tr. Vol. II pp. 39, 65. In 2011, Haigh, Joseph, and Jennifer formed a business partnership for an audio-visual events company, which regularly required Haigh to travel from his home in Chicago to Joseph's and Jennifer's home in Westville. Haigh stayed at Joseph's and Jennifer's home on these occasions, which by August of 2017, was typically two or three times per month but, depending on business, could be as many as four or five times per month. Haigh usually slept on the bottom bunk in M.H.'s bedroom when he stayed overnight at the family's home.

[3] In late-August of 2017, Joseph's sister, Cory Quyle, visited the family. Before Quyle left for the evening, then-six-year-old M.H. asked Quyle "can I tell you a

secret?" Tr. Vol. II p. 36. M.H. then disclosed an allegation of sexual contact between him and Haigh. Quyle told Joseph and Jennifer what M.H. had told her. Joseph and Jennifer reacted with shock but ultimately decided against informing the police because they were concerned about the truthfulness of M.H.'s allegations. Given the gravity of the accusation, however, Joseph installed a hidden security camera in M.H.'s bedroom to record M.H.'s and Haigh's actions when Haigh stayed with the family. The security camera did not record any inappropriate conduct during Haigh's first two or three visits following its installation.

[4]     On September 30, 2017, approximately one month after the camera had been installed, Haigh traveled to Westville to help Joseph and Jennifer transfer equipment to a new storage unit. That night, Haigh slept on the bottom bunk in M.H.'s bedroom. The next day, Joseph reviewed the footage recorded by the camera in M.H.'s bedroom and observed inappropriate contact between Haigh and M.H. Joseph watched Haigh "undress and touch" M.H. Tr. Vol. II p. 129. Joseph and Jennifer did not watch the entire recording, but "saw instances of caressing and contact." Tr. Vol. II p. 79. The video was "too distressing" so Joseph and Jennifer went for "a little walk" and Joseph called police. Tr. Vol. II p. 79.

[5]     Officer Jason Yagelski was dispatched to "a sexual assault case involving a minor." Tr. Vol. II p. 185. When he arrived, he was greeted by Joseph and Jennifer who "invited [him] into their residence, and they began to tell [him about] the incident that took place." Tr. Vol. II p. 185. Joseph provided

Officer Yagelski with a thumb drive containing the footage recorded by the camera in M.H.'s room and with what he attested was "a true and accurate" copy of Haigh's driver's license, which their business was "required to keep on file by the DOT." Tr. Vol. II p. 140. The copy of Haigh's driver's license indicated that Haigh's date of birth was "7/5/86." Tr. Vol. II p. 142. Officer Yagelski also collected M.H.'s sheets and the pajamas that he had worn the night before and told Jennifer "that it would be a good idea for [her] to take [M.H.] up to see a SANE nurse." Tr. Vol. II p. 81. Jennifer followed Officer Yagelski's suggestion and took M.H. to the hospital.

[6] Once they arrived at the hospital, Jennifer indicated that M.H. needed a rape kit. Jennifer and M.H. were escorted to a private room and Sexual Assault Nurse Examiner Judith Sulok interviewed each separately. Jennifer informed Nurse Sulok that she had observed video footage showing "possible penis to anus contact. There was touching. There was stroking." Tr. Vol. II p. 84. During her physical examination of M.H., Nurse Sulok observed that there was a bruise on the bottom of M.H.'s "rectal area, and then there was a lot of redness around the opening of the rectum in the folds, and then the rectum itself opens up immediately, which is not usual." Tr. Vol. II p. 241. When asked to demonstrate what may have occurred to him, M.H. "took his penis and he took his other hand and he went up and down motion on the penis." Tr. Vol. II p. 242. Nurse Sulok's examination also revealed "little notches" in his rectal area suggesting prior abuse. Tr. Vol. II p. 249. Nurse Sulok opined that, given her training and experience, her observations of M.H.'s rectal area were consistent

with the area coming into contact "with an object the size of a penis" and his anus "being penetrated by an object the size of a penis." Tr. Vol. III p. 2.

[7] On October 4, 2017, the State charged Haigh with two counts of Level 1 felony child molesting and one count of Level 4 felony child molesting. The State subsequently added a count of Level 1 felony attempted child molesting. Following trial, the jury found Haigh guilty as charged. At sentencing, the trial court granted the State's motion to vacate the conviction for attempted child molesting and sentenced Haigh to an aggregate thirty-six-year term.

# Discussion and Decision

[8] Haigh contends that the trial court abused its discretion by admitting certain evidence at trial.

> Questions regarding the admission of evidence are entrusted to the sound discretion of the trial court. *Fuqua v. State*, 984 N.E.2d 709, 713–14 (Ind. Ct. App. 2013), *trans. denied*. Accordingly, we review the court's decision on appeal only for an abuse of that discretion. *Id.* The trial court abuses its discretion only if its decision regarding the admission of evidence is clearly against the logic and effect of the facts and circumstances before it, or if the court has misinterpreted the law. *Id.*

*Harrison v. State*, 32 N.E.3d 240, 250 (Ind. Ct. App. 2015).

## I. Uncertified Copy of Haigh's Driver's License

[9] Haigh argues that the trial court abused its discretion by admitting a copy of his driver's license that was "insufficiently authenticated." Appellant's Br. p. 11.

Haigh asserts that the State was required to authenticate the copy of his driver's license as a public record under Evidence Rule 902(4). However, review of the record reveals that the document was not admitted under Evidence Rule 902(4), but rather as a record of a regularly conducted business activity under Evidence Rule 803(6).

[10] Evidence Rule 803 provides as follows:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
> ****
> (6) Records of a Regularly Conducted Activity. A record of an act, event, condition, opinion, or diagnosis if:
>> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>> (C) making the record was a regular practice of that activity;
>> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(9) or (10) or with a statute permitting certification; and
>> (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

[11] "The business records exception permits records of business activity to be admitted in circumstances when the recorded information will be trustworthy." *Stahl v. State*, 686 N.E.2d 89, 92 (Ind. 1997). "The reliability of business records

stems from the fact that the organization depends on them to operate, from the sense that they are subject to review, audit, or internal checks, from the precision engendered by the repetition, and from the fact that the person furnishing the information has a duty to do it correctly." *Id.* "'The fact that the business record is prepared by a party independent of the business does not negate these factors.'" *Embrey v. State*, 989 N.E.2d 1260, 1264 (Ind. Ct. App. 2013) (quoting *Williams v. Hittle*, 629 N.E.2d 944, 947 (Ind. Ct. App. 1994), *trans. denied*). "The sponsor of an exhibit need not have personally made it, filed it, or have firsthand knowledge of the transaction represented by it." *Boarman v. State*, 509 N.E.2d 177, 181 (Ind. 1987). "The sponsor need only show that the exhibit was part of certain records kept in the routine course of business and placed in the records by one who was authorized to do so, and who had personal knowledge of the transaction represented at the time of entry." *Id.*

[12] The record establishes that Joseph, Jennifer, and Haigh owned and operated an audio-visual events company. Joseph testified that the company was required by the DOT to keep a copy of Haigh's driver's license on file. Joseph provided the copy to Officer Yagelski. Joseph, an owner of the company and custodian of the company's records, testified that the copy of Haigh's driver's license provided to Officer Yagelski was a true and accurate copy of Haigh's driver's license on file with the company. Joseph had the requisite knowledge to authenticate the copy of Haigh's driver's license under Evidence Rule 803(6). Nothing in the record indicates a lack of trustworthiness in the manner in which

the copy of Haigh's driver's license was stored by the company or in which it was handed over to Officer Yagelski. The trial court did not abuse its discretion in admitting this document into evidence.

[13] Moreover, even if the copy of Haigh's driver's license should have been excluded, its admission was harmless. "The improper admission of evidence is harmless error when the conviction is supported by such substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction." *Wickizer v. State*, 626 N.E.2d 795, 800 (Ind. 1993). Haigh's driver's license was admitted as evidence that Haigh was over the age of twenty-one when he committed the acts at issue. Joseph and Jennifer both testified that they met Haigh in 2005, when all three were in college. The jury could reasonably infer from this testimony that if Haigh was in college in 2005, he was over the age of twenty-one when he committed the acts in September of 2017.[1]

## II. M.H.'s Out-of-Court Statements

[14] Haigh also contends that the trial court abused its discretion in allowing Quyle, Jennifer, Joseph, and Officer Yagelski to make references to M.H.'s initial

---

[1] Haigh also raises an argument that the copy of his driver's license was admitted in violation of the best evidence rule, codified at Indiana Evidence Rule 1002. Haigh has waived appellate review of this argument, however, because he did not object to the admission of the evidence on this basis at trial. *See Konopasek v. State*, 946 N.E.2d 23, 27 (Ind. 2011).

disclosure of abuse. Haigh acknowledges that because he did not object to this testimony at trial, he must establish that admission of the challenged evidence amounted to fundamental error. *See Halliburton v. State*, 1 N.E.3d 670, 678 (Ind. 2013) ("Failure to object at trial waives the issue for review unless fundamental error occurred."). "The fundamental error doctrine is an exception to the general rule that the failure to object at trial constitutes procedural default precluding consideration of the issue on appeal." *Id.* The "fundamental error exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Id.* "The error claimed must either make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process." *Id.* "This exception is available only in egregious circumstances." *Id.*

[15] The evidence at issue falls far short of blatantly violating the principles of due process or making a fair trial impossible. As the State points out, the references to M.H.'s initial disclosure of abuse were vague and nondescript. The trial court limited the testimony to basic facts establishing the timeline of events. The testimony did not provide any details about the substance of M.H.'s disclosure, nor did it provide any specific statements that were attributed to M.H. The testimony reveals that M.H. disclosed a "secret" to Quyle and Quyle shared that secret with Joseph and Jennifer. Tr. Vol. II p. 36. The record does not reveal what this "secret" was. The testimony further reveals that Joseph and Jennifer were shocked by the secret and, because they were unsure of

M.H.'s truthfulness, decided to install a surveillance camera in M.H.'s bedroom. Further, although Officer Yagelski indicated that Joseph and Jennifer informed him that they were initially made aware of M.H.'s disclosure by Quyle and that it involved sexual misconduct by a family friend, his testimony came after testimony establishing that Haigh was caught in the act on a recording from the camera placed in M.H.'s bedroom. As was the case with the others' testimony, Officer Yagelski's testimony did not contain any specific statements attributed to M.H.

[16] Given the vague and nondescript nature of the challenged evidence considered against the significant independent evidence of Haigh's guilt, we cannot say that the harm or potential for harm from the challenged evidence was so substantial that it denied Haigh fundamental due process. Haigh, therefore, has failed to prove that the admission of the challenged evidence constituted fundamental error.

[17] The judgment of the trial court is affirmed.

Vaidik, C.J., and Riley, J., concur.