Christopher A. CASADY, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 53A01–0909–CR–431.

Court of Appeals of Indiana.

Sept. 28, 2010.

————

David E. Schalk, Bloomington, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Joby D. Jerrells, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Christopher A. Casady ("Casady") was convicted in Monroe Circuit Court of sixteen counts of Class D felony voyeurism. Casady appeals and presents several issues, which we reorder, renumber, and restate as:

I. Whether the trial court erred in denying Casady's motion to dismiss;

II. Whether the evidence was sufficient to support Casady's convictions;

III. Whether the trial court erred in admitting evidence seized as a result of a warrant to search Casady's camera and a subsequent warrant to search his house;

IV. Whether the admission of the certain videotape evidence was unfairly prejudicial to Casady; and

V. Whether Casady's eighteen-year sentence, with twelve years suspended, is inappropriate.

We affirm.

## Facts and Procedural History

On the night of October 28, 2006, R.F., a graduate student at Indiana University in Bloomington, Indiana took a shower after working out at the HPER building [1] on the I.U. campus. While he was showering, R.F. saw something move in the periphery of his vision. R.F. eventually saw a man, later identified as Casady, appear and disappear behind the arched entry way into the common shower area. Casady came from behind the entryway three times. The third time, R.F. noticed that Casady was holding a camera at waist level while also masturbating. R.F. yelled at Casady, who moved away. R.F. quickly finished showering and dressed in the locker room. There, he again saw Casady, who was carrying a bag. Casady did not respond when R.F. tried to confront him. Unnerved by this incident and Casady's nonresponsive behavior, R.F. tried to report the incident to the police, but was unable to locate anyone inside the building. R.F. reported the incident to the Indiana University Police Department ("IUPD") the following day.

On February 6, 2007, R.F. was in the same locker room at the HPER building and recognized Casady sitting next to him. R.F. contacted the police, and IUPD Officer Scott Dunning responded to the locker room. There, he saw Casady sitting on a bench in the locker room, wearing a jock strap and with his pants pulled up to his knees. Officer Dunning told Casady to get dressed so he could speak to him. Casady asked why Dunning wished to talk to him, claiming that he was not "hurting anyone." Tr. p. 373. Casady slurred his speech and appeared to be intoxicated. Casady told Officer Dunning that he had not done anything wrong, but admitted that he was not

---

1. The Health, Physical Education, and Recreation complex is referred to as the "HPER."

Tr. p. 330.

there to swim, run, or play basketball. Casady then told Dunning, "you got me." *Id.* When Dunning asked Casady what he meant by that, Casady replied he was there because he "enjoy[ed] it" and because it made him "happy." *Id.* At that point, Officer Dunning read Casady his Miranda rights. Casady then stated that his life was over.

When Casady stood to get dressed, Officer Dunning noticed that Casady's pants appeared to be too large in waistsize for Casady to wear without a belt, and so Dunning asked Casady if he had a belt. Casady indicated that there was a belt in his gym bag, and agreed to let Officer Dunning reach into the bag to get the belt.[2] When Dunning reached into the bag and retrieved the belt, he saw a video camera. Casady then repeated his statement that his life was over and said he wanted to kill himself. When asked by Dunning about the camera, Casady denied using the camera to film people in the shower. Dunning arrested Casady and transported him to the police department.

The police contacted the prosecutor's office regarding obtaining a warrant to search the material on the camera found in Casady's bag. After a hearing, the prosecutor obtained a warrant to search the camera. The tape inside the camera contained footage of men urinating at urinals in public restrooms. Based on the information obtained from the tape, IUPD Detective Craig McClure obtained a warrant to search Casady's home. There, the police found numerous other video tapes. Review of these tapes showed more footage of more men urinating in public restrooms and also of men performing various sexual acts in public restrooms.

The State initially charged Casady, under a different cause number, with one count of Class D felony voyeurism on February 9, 2007. The State subsequently added a charge of possession of child pornography. On January 28, 2008, just seven days prior to the scheduled trial in that cause number, the State filed sixteen additional counts of voyeurism against Casady under another cause number. The trial court denied the State's motion to consolidate the trial for the new and the old charges. The State then moved to dismiss the original charges without prejudice, which the trial court granted on February 4, 2008.

A jury trial was held on December 8–10, 2008. At the conclusion of the trial, the jury found Casady guilty as charged. At a sentencing hearing held on May 18, 2009, the court sentenced Casady to eighteen months, with twelve months suspended, on each count. The court ordered the first eleven counts to run consecutively, and ordered the other four counts to run concurrently with each other but consecutively to the sentences on the other counts. Thus, Casady was sentenced to an aggregate term of eighteen years, with a total of six years executed and twelve years suspended to probation. Casady now appeals.

## I. Motion to Dismiss

Casady claims that the trial court erred in denying his motion to dismiss the sixteen counts filed against him well after the initial two counts were filed. Casady claims that the additional charges were effectively an improper amendment of the initial charges and that, because the initial charges had been dismissed, the subsequent charges should have been dismissed as well.

In support of his position, Casady cites *Fajardo v. State*, 859 N.E.2d 1201 (Ind.

---

**2.** At trial, Dunning explained that he did not want Casady to reach into the bag and retrieve something, given his earlier statement that his "life was over." Tr. p. 375.

2007), in which our supreme court held that substantive amendments to a felony charging information must be made no later than thirty days before the omnibus date. *Id.* at 1207 (citing Ind.Code § 35–34–1–5(b)). Here, however, the State did not amend the charging information; it instead filed additional charges based upon additional acts of voyeurism and eventually dismissed the original charges. We therefore disagree with Casady that the holding in *Fajardo* is applicable to the present case. *See Malone v. State,* 702 N.E.2d 1102, 1104 (Ind.Ct.App.1998) (holding that Indiana Code section 35–34–1–5(b) was not implicated where State did not amend original charging information but instead dismissed original charges and re-filed new charges).

Still, although the State is generally free to re-file a charge for the same offense when jeopardy has not already attached,[3] it may not use this authority if doing so will prejudice the defendant's substantial rights. *Davenport v. State,* 689 N.E.2d 1226, 1229 (Ind.1997). Here, the State filed the additional counts over ten months prior to Casady's trial, and he therefore cannot claim that he did not have adequate time to prepare for the new charges. Nor does it appear that the State filed the new charges in an attempt to avoid an unfavorable ruling by the trial court. In fact, the State filed the new charges against Casady before the trial court denied its motion to join the new and the original charges. We therefore cannot say that the State was attempting to avoid the adverse ruling when it dismissed the original charges and chose to pursue only the additional charges. *See Mendoza v. State,* 869 N.E.2d 546, 553–54 (Ind.Ct.App.2007) (State's dismissal of original charges and re-filing of new charges was permissible where State was not attempting to circumvent an adverse ruling it had already received and the defendant's trial did not begin until over nine months after the charges were re-filed); *Malone v. State,* 702 N.E.2d 1102, 1104 (Ind.Ct.App.1998) (State's dismissal of original charges and re-filing new charges did not prejudice the substantial rights of the defendant where State was not attempting to avoid an adverse ruling and where defendant could not otherwise demonstrate any prejudice because his trial was not held until eleven months after the re-filing of the charges and he was able to employ substantially the same theories of defense as to both the original and the re-filed charges); *cf. Davenport,* 689 N.E.2d at 1229 (State's actions of dismissing original charges in original trial court after receiving unfavorable ruling on motion to amend charging information and re-filing charges in different trial court "crossed over the boundary of fair play" and prejudiced defendant's substantial rights).

## II. Sufficiency of the Evidence

Casady next claims that the evidence presented by the State was insufficient to support his convictions. Upon a challenge to the sufficiency of evidence to support a conviction, we neither reweigh the evidence nor judge the credibility of the witnesses; instead, we respect the exclusive province of the trier of fact to weigh any conflicting evidence. *McHenry v. State,* 820 N.E.2d 124, 126 (Ind.2005). We consider only the probative evidence and reasonable inferences supporting the verdict, and we will affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable

---

**3.** Here, jeopardy had not attached to the original charge, which was dismissed before trial thereon commenced. *See Jackson v. State,* 925 N.E.2d 369, 373 (Ind.2010) (jeopardy attaches when a jury has been selected and sworn).

trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

Casady claims that the evidence presented by the State did not constitute the crime of voyeurism as defined by the relevant statute, which provides:

(a) A person:

 (1) who:

 (A) peeps; or

 (B) goes upon the land of another with the intent to peep; into an occupied dwelling of another person; or

 (2) who peeps into an area where an occupant of the area reasonably can be expected to disrobe, including:

 (A) restrooms;

 (B) baths;

 (C) showers; and

 (D) dressing rooms;

 without the consent of the other person, commits voyeurism, a Class B misdemeanor.

(b) However, the offense under subsection (a) is a Class D felony if:

 (1) it is knowingly or intentionally committed by means of a camera, a video camera, or any other type of video recording device; or

 (2) the person who commits the offense has a prior unrelated conviction:

 (A) under this section; or

 (B) in another jurisdiction, including a military court, for an offense that is substantially similar to an offense described in this section.

(c) "Peep" means any looking of a clandestine, surreptitious, prying, or secretive nature.

Ind.Code § 35–45–4–5 (2004 & Supp.2010). The interpretation of a statute is a question of law reserved for the court and is reviewed *de novo. Montgomery v. State,* 878 N.E.2d 262, 266 (Ind.Ct.App.2007).

Casady's statutory interpretation argument is twofold: he claims that his behavior did not constitute "peeping" as defined by section 5(c), and he claims that the area in which he was alleged to have peeped was not an area where an occupant of the area reasonably could be expected to disrobe. We address each contention in turn.

### A. *Peeping*

■ Casady first claims that his behavior was not peeping because it was not "clandestine, surreptitious, prying or secretive in nature." *See* I.C. § 35–45–4–5(c). He claims that his behavior instead was a "bold and brazen, open and obvious videotaping and exhibitionism in the shower." Appellant's Br. at 10. We disagree. The facts most favorable to the jury's verdict reveal that R.F. saw Casady holding a video camera at waist-level, stepping in and out of the arched doorway. And R.F. testified that Casady appeared to be "hid[ing]" in the shadows. Tr. pp. 331–32. From this, the jury could reasonably conclude that Casady was looking at R.F. in a clandestine, surreptitious, prying, or secretive manner. Further, the videotape evidence presented at trial clearly shows Casady videotaping men urinating through a peephole while hiding in a restroom stall. The jury could reasonably conclude that Casady was looking at these men in a clandestine, surreptitious, prying, or secretive manner and did so with a camera.

### B. *Area Where Occupants Reasonably Can Be Expected to Disrobe*

■ Casady next claims that the areas into which he peeped, i.e., urinals in restrooms, are not areas where occupants thereof can reasonably be expected to disrobe. *See* I.C. § 35–45–4–5(a)(2). In so

doing, he argues that men do not "disrobe" in order to use urinals.

We note that the term "disrobe" is not defined in the relevant statute, nor has our research revealed any other relevant statutory definition of this term.[4] We therefore assign the word "disrobe" its plain and ordinary meaning. *See Montgomery,* 878 N.E.2d at 266. And to determine the plain and ordinary meaning of words, we may consult English language dictionaries. *Id.* According to Merriam–Webster's Online Dictionary, "disrobe" is defined as "to take off one's clothing" and "to strip of clothing or covering." *See* http://www. merriam-webster.com/dictionary/disrobe.

Casady claims that the typical activity by men using urinals is not disrobing because the term "disrobe" does not include "nudging or pulling a body part through the clothing." Appellant's Br. at 11. In other words, Casady argues that men using urinals do not take off or strip themselves of clothing and that therefore, he did not peep into an area where the occupants of the area could reasonably be expected to disrobe. We think Casady's argument misses the point. The question is not whether the men in the restrooms where Casady was peeping did disrobe; the question is whether Casady peeped into an area where the occupants of the area reasonably can be expected to disrobe.

The governing statute explicitly lists four areas as those where the occupants thereof reasonably can be expected to disrobe: restrooms, baths, showers, and dressing rooms. I.C. § 35–45–4–5(a)(2). Here, Casady peeped into a shower and a public restroom. This fits within the statutory definitions of places where the occupants of the area reasonably can be expected to disrobe, whether or not they

actually did. Further, because Casady used a camera to commit voyeurism, his conduct constituted a Class D felony. The State presented evidence sufficient to support Casady's convictions.

### III. Search of Camera and Home

■ Casady also claims that the trial court erred in admitting evidence obtained as a result of the search of both his camera and his home. When a defendant challenges the propriety of a search following a completed trial, the issue is one of whether the trial court properly admitted the evidence. *Collins v. State,* 822 N.E.2d 214, 218 (Ind.Ct.App.2005). Still, our standard of review of rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pretrial motion to suppress or by trial objection. *Id.* We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling, but we must also consider the uncontested evidence favorable to the defendant. *Id.*

Casady argues that the trial court should not have admitted the evidence obtained as a result of the search of his camera and home because the warrants authorizing these searches were not properly supported by probable cause. Both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution require probable cause for the issuance of a search warrant. *Mehring v. State,* 884 N.E.2d 371, 376 (Ind.Ct.App.2008), *trans. denied.* Probable cause is a fluid concept incapable of precise definition and must be decided based on the facts of each case. *Id.* (citing *Figert v. State,* 686 N.E.2d 827, 830 (Ind. 1997)). In deciding whether to issue a search warrant, the issuing magistrate's task is simply to make a "practical, com-

---

4. In fact, a search of Westlaw's un-annotated Indiana Statutes database reveals that the only use of the term "disrobe" in the Indiana Code is in section 35–45–4–5(a)(2).

mon-sense decision whether, given all the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in a particular place." *Id.* at 376–77 (citing *State v. Spillers*, 847 N.E.2d 949, 953 (Ind.2006)).

■■■ The duty of a reviewing court is to determine whether the issuing magistrate had a substantial basis for concluding that probable cause existed. *Id.* at 377. While we review the question *de novo*, we give significant deference to the issuing magistrate's determination and focus on whether reasonable inferences drawn from the totality of the evidence support the finding of probable cause. *Id.* "In determining whether an affidavit provided probable cause for the issuance of a search warrant, doubtful cases are to be resolved in favor of upholding the warrant." *Id.* (citing *Rios v. State*, 762 N.E.2d 153 (Ind. Ct.App.2002)). On review, "we consider only the evidence presented to the issuing magistrate and not *post hac* justifications for the search." *Jaggers v. State*, 687 N.E.2d 180, 182 (Ind.1997).

### A. Search of Camera

■■■ Casady claims that the trial court erred in admitting the evidence found during the search of the video camera found in his gym bag. The deputy prosecutor who appeared before the issuing magistrate testified that Casady had been found in a locker room, partially clothed, watching two men. One of those men identified Casady as the same man he had previously seen filming him in the shower with a camera in October 2006. Casady told the police that he was not at the HPER building for athletic reasons but was instead there because watching the other men made him feel good. Casady told the police that they "got him," which could be taken as incriminating. While helping Casady dress, the police saw a camera in his

possession, and when asked if he used the camera to film men in the shower or locker room, Casady stated that his life was "over" and that he wanted to commit suicide, which could also be viewed as incriminating.

From this, the issuing magistrate could make a practical, common-sense decision that there was a fair probability that evidence of a crime, i.e. voyeurism, would be found on the videotape in the camera. The trial court therefore did not err in denying Casady's motion to suppress the evidence found on the videotape or in admitting into evidence the material found on the videotape. Indeed, we commend the police officers involved for their decision to seek a warrant before reviewing the contents of the videotape.

### B. Search of Casady's Home

■■■ Casady also claims that the trial court erred in admitting evidence seized as a result of the search of his home, namely the videotapes of men urinating. Casady claims that the warrant to search his home was not supported by probable cause. Again, we disagree.

The police officers who viewed the videotape in Casady's camera found footage of men being secretly taped while urinating in public restrooms. In the probable cause affidavit submitted to the issuing magistrate, Detective McClure of the IUPD explained that Casady had been reported in 1996 for watching men in a public restroom at a building on the I.U. campus. And again in November of 2003, Casady was reported for being in a men's locker room looking at men as they used the restroom. A search incident to Casady's arrest during the 2003 incident revealed a DVD camcorder, but the camcorder was not searched, and Casady was apparently not charged in connection with that incident. The probable cause affida-

vit then details the incident on February 6, 2007, where Casady was arrested at the HPER locker room and the video camera was found in his gym bag. As explained in the affidavit, the videotape showed footage of men urinating at urinals in a public restroom, being secretly videotaped through a peephole.

Detective McClure also testified before the issuing magistrate and further explained that there was no video of anyone in the shower on the videotape found in the camera. Based on his experience with voyeurism cases, McClure testified that voyeuristic people often collect and keep voyeuristic material, and that he therefore expected to find more evidence of criminal voyeurism in Casady's home. The magistrate found this sufficient and issued a warrant to search Casady's home, where the police subsequently found more video of men being taped while using urinals.

On appeal, Casady claims that the issuing magistrate was incorrect and that the trial court should have suppressed the evidence found at his home and not permitted this evidence to be admitted at trial. Casady claims the warrant to search his home was "based entirely on the fact that voyeuristic images were in his camera and [that] a police officer testified that in his experience, people who are interested in such images tend to collect them." Appellant's Br. at 14. According to Casady, this reasoning "would justify intrusions into the homes of people caught with items in their pockets such as small bags of marijuana." Id. We disagree.

Here, in addition to the video camera and footage discovered in his gym bag, Casady had been seen several months earlier by an eyewitness surreptitiously filming that eyewitness in the shower. The same eyewitness had reported Casady to university police on the day of his arrest after noticing him in the locker room, and

it was there that Casady was apprehended with a video camera in his gym bag. The videotape in the camera in the gym bag contained footage of several men using urinals, being surreptitiously filmed through a peephole. The probable cause affidavit also observed that this was not the first time Casady had been found with a camera in a locker room. Based on this evidence, the issuing magistrate could easily come to the practical, common-sense conclusion that there was a fair probability that additional evidence of voyeurism would be found in Casady's home. The trial court did not err in admitting the evidence found during the search of Casady's home.

### IV. Unfair Prejudice

Casady claims that the trial court erred in admitting into evidence portions of the videotapes found in his home, specifically State's Exhibits 1 and 3. Casady's argument on this issue is quite sparse. In fact, his actual argument on this issue consists of one paragraph containing four sentences. Casady cites no rule of evidence and no case law to explain why or how the videotape evidence was improperly admitted nor does he further elaborate his argument. We therefore conclude that Casady has waived any claim regarding the propriety of admitting the videotapes into evidence. *See Davis v. State*, 835 N.E.2d 1102, 1113 (Ind.Ct.App.2005) (concluding that the defendant's claim that tendered jury instruction was a proper statement of law was waived where he cited no authority in support of his position); Ind. Appellate Rule 46(A)(8)(a) ("each contention [in an appellant's brief] must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on[.]").

Still, we note that, by referring to "uncharged" conduct, Casady could be referring to Indiana Evidence Rule 404(b).

*See Udarbe v. State,* 749 N.E.2d 562, 564 (Ind.Ct.App.2001) (noting that Evidence Rule 404(b) deals with the admissibility of uncharged misconduct). At trial, however, Casady did not object on Evidence Rule 404(b) grounds. Instead, he based his objections on grounds that the videotapes were the result of unconstitutional searches and seizures, an argument we have rejected above. A party may not object to the admission of evidence on one ground at trial and seek reversal on appeal based on a different ground. *Malone v. State,* 700 N.E.2d 780, 784 (Ind.1998). Thus, to the extent that Casady's appellate argument is based on Evidence Rule 404(b), it is further waived by failing to object on the same grounds as he now presents on appeal. *See id.*

By referring to the prejudicial effect of the videotapes, Casady could also be referring to Evidence Rule 403, which provides that even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." With regard to State's Exhibit 1, however, Casady did not raise any objection based on relevance or unfair prejudice until after the tape had been admitted over his search-and-seizure objection and had already begun to be played for the jury. *See* Tr. pp. 385–86, 388. Casady's argument regarding State's Exhibit 1 is further waived for failure to make a contemporaneous objection. *See Brown v. State,* 929 N.E.2d 204, 207 (Ind. 2010) (rejecting appellant's contention that a party may "resurrect" an objection after the evidence has been admitted).

With regard to State's Exhibit 3, portions of which were also played for the jury, Casady did object, before the admission of the tape, that the contents of the tape were "scandalous and outrageous ... and extremely prejudicial." Tr. p. 391. As noted, however, Casady does not cite any evidentiary rule or case supporting his brief argument that the tape was improperly admitted. For us to consider this claim on the merits, we would have to come too close to acting as an advocate on Casady's behalf, a burden we will not undertake.[5] *See Barrett v. State,* 837 N.E.2d 1022, 1030 (Ind.Ct.App.2005) (noting that court on appeal will not become a party's advocate or address arguments that are improperly expressed or poorly developed).

### V. Sentencing

 Lastly, Casady briefly claims that his sentence is improper. On appeal, Casady notes that he has no criminal history, that no voyeuristic materials were found on his computer, and that there was no indication that Casady ever shared his videos with anyone else. He therefore claims that his was a "mild case" for which probation, not a lengthy prison sentence was more proper. Again, however, he fails to cite any authority or further explain why his sentence is improper. We therefore conclude that Casady's sentencing argument is waived for failure to make a cogent argument and to cite to authority as required by Appellate Rule 46(A)(8)(a). *See Davis,* 835 N.E.2d at 1113; *McMahon v. State,* 856 N.E.2d 743, 751 (Ind.Ct.App. 2006) (concluding that defendant waived sentencing argument for failure to make a cogent argument).

 Waiver notwithstanding, we note that pursuant to Indiana Appellate

---

**5.** Casady does expand his argument a bit further in his reply brief, but even then, he fails to cite or otherwise refer to any evidentiary rule, statute, or case law in support of his contention that the trial court improperly admitted the videotapes.

Rule 7(B), we may revise a sentence otherwise authorized by statute if, "after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Although we have the power to review and revise sentences, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind.2008). It is the defendant's burden on appeal to persuade us that the sentence imposed by the trial court is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind.2006).

Based on the facts and circumstances of the present case, we cannot say that Casady's aggregate sentence of six years executed and twelve years suspended was inappropriate. Casady surreptitiously recorded numerous men using urinals on multiple occasions. Those he recorded even included a child. *See* Tr. p. 451. He also recorded R.F. while he was in the shower, and masturbated in view of R.F. Casady's behavior continued long enough for him to accumulate eighteen videotapes. Yet when confronted by the police, Casady claimed that he was not "hurting anyone." Tr. p. 373.

Moreover, the trial court imposed the advisory sentence of eighteen months on each count. We note that the trial court ordered many, but not all, of the sentences to be served consecutively. But this decision was justified by the multiple incidents and multiple victims of Casady's criminal, voyeuristic behavior. *See Townsend v. State*, 860 N.E.2d 1268, 1273 (Ind.Ct.App. 2007) (consecutive sentences may be justified by separate harms and separate acts against more than one person). Consider-

ing the nature of the offense and the character of the offender, and giving due consideration to the trial court's sentencing decision, we cannot say that Casady has met his burden of demonstrating that his sentence is inappropriate.

### Conclusion

The trial court did not err in denying Casady's motion to dismiss because Casady has failed to show how he was harmed by the State's filing of additional charges and subsequent dismissal of the original charges. The evidence is sufficient to support Casady's convictions because his behavior of surreptitiously videotaping men showering and using urinals meets the statutory definition of peeping into an area where the occupants of the area reasonably can be expected to disrobe. The warrants to search Casady's camera and home were properly supported by probable cause, and the trial court did not err in admitting the evidence seized as a result of the execution of these warrants. Casady has waived any argument that the videotapes admitted into evidence were unfairly prejudicial. Lastly, Casady's sentence was not inappropriate.

Affirmed.

RILEY, J., and BRADFORD, J., concur.