**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**CORY J. LIGHTNER**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

CHAS J. HARPER,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀Appellant-Petitioner,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀vs.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀No.  40A01-1307-PC-286
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
STATE OF INDIANA,⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀Appellee-Respondent.⠀⠀⠀⠀⠀)

APPEAL FROM THE JENNINGS CIRCUIT COURT
The Honorable William E. Vance, Special Judge
Cause No. 40C01-1003-PC-002

**April 16, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

Chas J. Harper ("Harper") appeals from the post-conviction court's order denying his petition for post-conviction relief. Harper sought to set aside his convictions for Class A felony dealing in methamphetamine,[1] Class B felony dealing in a narcotic drug,[2] and Class D felony receiving stolen property.[3] Harper's petition is based on his claim that he received ineffective assistance of trial and appellate counsel.

We affirm in part, and remand in part.

## ISSUE

Whether the post-conviction court erred in denying Harper's petition for post-conviction relief.

## FACTS

The facts of Harper's crimes were set forth in the opinion from Harper's direct appeal as follows:

> On October 15, 2007, Officer Jason Allen of the North Vernon Police Department arrested Matt Mullins for attempting to steal lithium batteries from Walmart. After his arrest, Mullins told Officer Allen that he did not want to go to jail and that he had seen drugs that afternoon at Harper's home. Mullins then told Officer Allen how to get to the home and what kind of car was parked outside the home, and he drew a general map of the inside of the home.
>
> In the living room of the home, officers found a monitor below the television. The monitor was connected to a video surveillance camera that was mounted on the outside of the home. On the monitor the officers could see a live transmission from the camera of anyone coming to and going from the home.

---

[1] Ind. Code § 35-48-4-1.1(a)(2)(C)(b)(1).

[2] I.C. § 35-48-4-1(a)(2)(C).

[3] I.C. § 35-43-4-2(b).

Based on that information, Officer Allen obtained a warrant to search Harper's home. With other officers, Officer Allen executed the search warrant on October 15. In the search, the officers found Harper's wife, Jennifer, in the bathroom. She said she had just returned from Texas and had not seen Harper since October 11. In the bar of a towel rack within reach of the toilet, the officers found a pen, an empty pen barrel, "aluminum foil with residue[,]" and a lighter.

The back bedroom of the house contained identification cards for Harper. In the same room, officers found a ladies' hand mirror with a white powdery residue that tested positive for methamphetamine and a lockbox or fire safe, about the size of a laptop computer, partially under the bed. The lockbox contained a firearm in a black holster, a bag of "a crystal-like substance," two sandwich bags containing a total of twenty foil bindles, and a camouflage-colored scale. Field-testing showed that the crystal-like substance contained methamphetamine, and subsequent testing revealed that it had a net weight of 109.9 grams. Testing showed that the foil bindles contained heroin and the net weight of the bags were .18 grams and .43 grams respectively.

On October 22, the State filed an information charging Harper with seven counts. The State later amended that information to charge Harper with dealing in methamphetamine, as a Class A felony; dealing in narcotic drug (heroin), as a Class B felony, possession of heroin, as a Class D felony; possession of methamphetamine, as a Class C felony; and receiving stolen property, as a Class D felony. The amended information also alleged two sentence enhancements: that Harper possessed a handgun while committing the offense of dealing in a controlled substance and dealing in methamphetamine and that he was an habitual offender.

*Harper v. State*, 40A01-0808-CR-361, slip op. at 1 (Ind. Ct. App. April 28, 2009).

Harper was represented at trial by Stephen Pierson ("Attorney Pierson"). As a part of Attorney Pierson's preparation, he reviewed the search warrant affidavit, the search warrant, and considered whether he should file a motion to suppress. Attorney Pierson also interviewed Harper's wife, Jennifer Harper ("Jennifer"). According to Jennifer, she planned to sell the drugs found in the house so that she could hire a lawyer for a child custody case. In addition, Jennifer told Attorney Pierson that Harper had moved to

Florida at the time the warrant was served. Attorney Pierson ultimately decided to forego filing the motion to suppress and decided to rely on Jennifer's testimony at trial.

After hearing the evidence, a jury found Harper guilty as charged in the amended information. Harper was also found to be an habitual offender. The trial court entered judgment of conviction for Class A felony dealing in methamphetamine, Class B felony dealing in a narcotic drug, and Class D felony receiving stolen property.

At sentencing, the trial court found the amount of methamphetamine involved, Harper's criminal history, and his lack of employment as aggravating factors. The trial court found that Harper's GED and the hardship his incarceration would have on his child were mitigating factors. The trial court sentenced Harper to forty (40) years on the dealing in methamphetamine conviction, fifteen (15) years on the dealing in a narcotic conviction, and two (2) years on the receiving stolen property conviction. The trial court ordered the drug convictions served concurrently; the theft conviction ran consecutive to Harper's other convictions. Finally, the trial court separately sentenced Harper to thirty (30) years pursuant to the habitual offender statute.[4]

Harper filed a direct appeal of his convictions, arguing that the trial court erred in admitting evidence obtained with the search warrant, that insufficient evidence supported his convictions, and that his sentence was inappropriate. Our Court held that the trial

---

[4] Here, the trial court erred. It is well settled that an "habitual offender finding does not constitute a separate crime nor does it result in a separate sentence, rather it results in a sentence enhancement imposed upon the conviction of a subsequent felony." *Hendrix v. State*, 759 N.E.2d 1045, 1048 (Ind. 2001) (citing *Greer v. State*, 680 N.E.2d 526, 527 (Ind. 1997); *Pinkston v. State*, 436 N.E.2d 306, 307-08 (Ind. 1982)). Therefore, we remand to the trial court with instructions to correct the sentencing order, abstract of judgment, and chronological case summary to reflect that the thirty (30) year habitual offender enhancement serves as an enhancement of Harper's Class A felony dealing in methamphetamine sentence.

court did not err in the admission of evidence and that sufficient evidence supported Harper's convictions. As to Harper's allegedly inappropriate sentence, we held that he had waived the issue due to the lack of a cogent argument. Judge Friedlander dissented only in the panel's decision to waive Harper's Indiana Appellate Rule 7(B) argument, stating that he would have revised Harper's aggregate sentence to sixty (60) years.

Harper filed a pro-se motion for post-conviction relief on March 19, 2010 alleging that he received ineffective assistance of trial counsel. In relevant part, Harper alleged that Attorney Pierson was ineffective for failing to file a motion to suppress the evidence seized with the search warrant and failing to "investigate and present mitigating evidence during penalty phase [sic]." (App. 6). On May 24, 2010, the State Public Defender filed an appearance and a notice of inability to investigate Harper's claim because of its caseload. The motion requested that Harper not be required to file an amended petition for post-conviction relief until the Public Defender was prepared to proceed with Harper's case. The post-conviction relief court granted the motion.

On April 4, 2012, the Public Defender filed a substitution of counsel. Thereafter, on November 5, 2012, Harper filed an amended petition for post-conviction relief. The amended petition added an allegation of ineffective assistance of appellate counsel for waiving Harper's claim under Indiana Appellate Rule 7(B) and failing to challenge the trial court's improper use of the weight of methamphetamine involved as an aggravating circumstance. The post-conviction court set the matter for an evidentiary hearing on April 12, 2013.

At the post-conviction hearing, Harper introduced into evidence the search warrant and affidavit, the appellate brief and petition to transfer from his direct appeal, and the opinion from our Court in his direct appeal. Harper also called Attorney Pierson and Patrick McGrath ("Attorney McGrath"), Harper's appellate counsel, as witnesses. Attorney Pierson essentially testified that after considering the motion to suppress and the information he received from Jennifer, he informed Harper that he believed that the search warrant would be upheld by the good-faith exception. Attorney Pierson decided to rely on Jennifer's testimony at trial. Attorney McGrath testified that Harper's case was one of his first appellate cases. He further admitted that it was probably the first time that he presented an argument for review of a sentence under Indiana Appellate Rule 7(B). Attorney McGrath admitted that it was possible that he had overlooked material in the trial record to use in his brief due to his lack of experience.

On June 20, 2013, the post-conviction court issued an order denying Harper's petition for post-conviction relief. Specifically, the post-conviction court found that even if a lack of probable cause existed for the search warrant in Harper's case, the warrant and subsequent search would have been upheld under the good faith exception pursuant to *United States v. Leon*, 468 U.S. 897 (1984). As to Harper's claim of ineffective assistance of appellate counsel, the post-conviction court found that even if Attorney McGrath had not waived the inappropriate sentence issue, Harper's sentence was appropriate. Harper now appeals.

DECISION

Harper appeals from the post-conviction court's order denying post-conviction relief on his claims of ineffective assistance of trial and appellate counsel. Our standard of review in post-conviction relief cases is well settled:

> We observe that post-conviction proceedings do not grant a petitioner a "super-appeal" but are limited to those issues available under the Indiana Post-Conviction Rules. Post-conviction proceedings are civil in nature, and petitioners bear the burden of proving their grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5). A petitioner who appeals the denial of PCR faces a rigorous standard of review, as the reviewing court may consider only the evidence and the reasonable inferences supporting the judgment of the post-conviction court. The appellate court must accept the post-conviction court's findings of fact and may reverse only if the findings are clearly erroneous. If a PCR petitioner was denied relief, he or she must show that the evidence as a whole leads unerringly and unmistakably to an opposite conclusion than that reached by the post-conviction court.

*Shepherd v. State*, 924 N.E.2d 1274, 1280 (Ind. Ct. App. 2010) (internal citations omitted), *trans. denied.*

1. Ineffective Assistance of Trial Counsel

A claim of ineffective assistance of trial counsel requires a showing that: (1) counsel's performance was deficient by falling below an objective standard of reasonableness based on prevailing professional norms; and (2) counsel's performance prejudiced the defendant such that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Davidson v. State*, 763 N.E.2d 441, 444 (Ind. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)), *reh'g denied*, *cert. denied*. "Failure to satisfy either of the two prongs will cause the claim to fail." *Gulzar v. State*, 971 N.E.2d 1258, 1261 (Ind. Ct.

App. 2012) (citing *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002)), *trans. denied*. Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *French*, 778 N.E.2d at 824.

Harper argues that his trial counsel was ineffective for failing to file a motion to suppress the evidence. Specifically, Harper contends that the search warrant at issue was not supported by probable cause because the warrant's affidavit was based on unreliable hearsay.

The decision regarding whether to file a particular motion is a matter of trial strategy. *Moore v. State*, 872 N.E.2d 617, 620 (Ind. Ct. App. 2007), *reh'g denied*, *trans. denied*. "'[A]bsent an express showing to the contrary, the failure to file a motion does not indicate ineffective assistance of counsel.'" *Id.* at 620-21 (quoting *Glotzbach v. State*, 783 N.E.2d 1221, 1224 (Ind. Ct. App. 2003)). "'To prevail on an ineffective assistance of counsel claim based upon counsel's failure to file motions on a defendant's behalf, the defendant must demonstrate that such motions would have been successful.'" *Moore*, 872 N.E.2d at 621 (quoting *Wales v. State*, 768 N.E.2d 513, 523 (Ind. Ct. App. 2002), *clarified on reh'g*, 774 N.E.2d 116 (Ind. Ct. App. 2002), *trans. denied*).

"Probable cause" for issuing a search warrant "is a fluid concept incapable of precise definition and must be decided based on the facts of each case." *Cassady v. State*, 934 N.E.2d 1181, 1188 (Ind. Ct. App. 2010), *trans. denied*. In deciding whether to issue a search warrant, the task of the issuing magistrate is simply to make "a practical, commonsense decision whether, given all the circumstances set forth in the affidavit,

there is a fair probability that evidence of a crime will be found in a particular place." *Id.* at 1189.

The duty of a reviewing court is to determine whether the magistrate had a "substantial basis" for concluding that probable cause existed. *State v. Spillers*, 847 N.E.2d 949, 953 (Ind. 2006). A "reviewing court" includes both the trial court ruling on a motion to suppress and an appellate court reviewing that decision. *Id.* A "substantial basis" requires that we focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause, giving significant deference to the magistrate's determination. *Id.* We consider only the evidence presented to the issuing magistrate, not after-the-fact justifications for the search. *Casady*, 934 N.E.2d at 1189. In determining whether an affidavit provided probable cause for the issuance of a search warrant, doubtful cases should be resolved in favor of upholding the warrant. *Id.*

Indiana Code § 35-33-5-2 outlines what information is required in an affidavit for probable cause. If a warrant is sought based upon hearsay information, the affidavit must either: (1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or (2) contain information that establishes that the totality of the circumstances corroborates the hearsay. *Spillers*, 847 N.E.2d at 953-54 (citing Ind. Code § 35-33-5-2 (b)(1), (2)).

The trustworthiness of hearsay for the purpose of establishing probable cause can be established in a number of ways, including where: (1) the informant has given correct information in the past, (2) independent police investigation corroborates the informant's

9

statements, (3) some basis for the informant's knowledge is demonstrated, or (4) the informant predicts conduct or activity by the suspect that is not ordinarily easily predicted. *Id.* at 954. These examples are not exclusive, and, depending on the facts, other considerations may come into play in establishing the reliability of the informant or the hearsay. *Id.* One such additional consideration is whether the informant has made declarations against penal interest. *Id.* Indeed, our Supreme Court has held that "[d]eclarations against penal interest can furnish sufficient basis for establishing the credibility of an informant within the meaning of Ind. Code § 35-33-5-2(b)(1)." *Spillers*, 847 N.E.2d at 954 (quoting *Houser v. State*, 678 N.E.2d 95, 100 (Ind. 1997)).

Here, the post-conviction court ruled that the search warrant was supported by probable cause. Specifically, the post-conviction court found, citing *State v. Shipman*, 987 N.E.2d 1122 (Ind. Ct. App. 2013), that the informant in Harper's case was reliable because he relayed information that was against his penal interests. Further, the post-conviction court stated that "even had this Court determined that, under [*Spillers*], the warrant in question was issued without probable cause, the evidence seized pursuant to the search warrant was still admissible under the good faith exception to the warrant requirement, established in [*United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677] (1984). (App. 156). We agree with the post-conviction court in part. The informant in Harper's case was not reliable, but the officers relied on the search warrant issued in objective good faith.

The informant in Harper's case is similar to the one in *Spillers*. There, the informant was arrested for possession of cocaine after police officers executed a search

10

warrant. *Spillers*, 847 N.E.2d at 951. After being arrested, the informant told the officers that Spillers was his drug source. *Id*. at 952. The informant told the police that Spillers had sold him cocaine the same day and gave the police officers Spillers's address and the make and model of his car. *Id*. The officers used this information to obtain a search warrant for Spillers's house and car; the officers found cocaine in both and arrested Spillers. *Id*. After charges were filed, Spillers filed a motion to suppress the cocaine and the trial court granted his motion. *Id*. We reversed the trial court, holding that the informant's hearsay statements supported issuing the search warrant for Spillers's apartment. *Id*.

On transfer, the Supreme Court held that the information from the informant was not reliable. Particularly, the Court stated that the informant's admissions were "less a statement against his penal interest than an obvious attempt to curry favor with the police." *Id*. at 956. Having found that the informant's information did not satisfy any of the requirements for establishing reliability, our Supreme Court found that probable cause did not exist to issue the search warrant. *Id*. at 957. However, the Supreme Court upheld the search warrant according to the good faith exception. *Id*.

In *Leon*, the United States Supreme Court held that the exclusionary rule does not require the suppression of evidence obtained in reliance on a defective search warrant if the police relied on the warrant in objective good faith. *Leon*, 468 at 920, 104 S.Ct. 3405. However, the Supreme Court further stated that suppression of evidence obtained with a warrant is appropriate "if the magistrate or judge in issuing the warrant was misled by information in the affidavit that the affiant knew was false or would have known was

11

false except for his reckless disregard of the truth," or the search warrant affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id*. at 923. Spillers made no allegations that the magistrate issuing the warrant in his case was misled, and our Supreme Court acknowledged that the unreliability of the informant's statements was not so obvious that officers could not objectively rely on the warrant.

Turning to Harper's case, he makes no allegation that the issuing magistrate was misled by the detective seeking the search warrant. As to the second instance when the good faith doctrine would not apply, Harper has not persuaded us that the search warrant affidavit was so lacking in indicia of probable cause that officers could not rely on it in objective good faith. We believe, as we did in *Shipman*, that Harper's case turns on a close call on whether the informant gave a statement against his penal interest. *Shipman*, 987 N.E.2d at 1129. Cases of this nature are to be resolved in favor of upholding the warrant. *Casady*, 934 N.E.2d at 1189. Accordingly, we find that Harper has not shown that a motion to suppress would have been granted. As a result, his claim for ineffective assistance of trial counsel fails.

2. Ineffective Assistance of Appellate Counsel

Harper claims that his appellate counsel was ineffective because: (a) he failed to challenge an improper aggravator; and (b) he failed to cogently argue that his sentence was inappropriate under Indiana Appellate Rule 7(B).

The same standard of review applied to claims of ineffective assistance of trial counsel apply to claims of ineffective assistance of appellate counsel. *Williams v. State*,

724 N.E.2d 1070, 1078 (Ind. 2000), *reh'g denied, cert. denied*.  Ineffective assistance of appellate counsel claims fall into three basic categories:  (1) denying access to an appeal; (2) waiver of issues; and (3) failure to present issues well.  *Bieghler v. State*, 690 N.E.2d 188, 195 (Ind. 1997).  We review each of Harper's claims of appellate error separately.

A.  *Failure to Challenge Improper Aggravating Factor*

Harper argues that his appellate counsel was deficient for failing to challenge the trial court's use of the amount of methamphetamine involved as an aggravating circumstance.  He asserts that had Attorney McGrath argued this point on appeal, he would have received sentencing relief.  We find no deficient performance here.

Harper relies on our decision in *Shackleford v. State*, 622 N.E.2d 1340, 1346 (Ind. Ct. App. 1993), where we stated that "[a] fact that comprises a material element of the offense may not also constitute an aggravating circumstance to support an enhanced sentence."  However, in *Pedraza v. State*, 887 N.E.2d 77, 80 (Ind. 2008), our Indiana Supreme Court stated the following:

> Indiana sentencing used to be a two-step process—imposing of the presumptive sentence, then deciding whether any aggravators or mitigators warranted deviation.  After the 2005 modifications, it consists of only one discretionary determination.  Thus, a sentence toward the high end of the range is no longer an "enhanced sentence" in the sense that the former regime provided.  Moreover, while the trial court must still list in its sentencing statement those reasons it finds relevant to the sentence, the correlation between those factors and the given sentence is not as precisely tailored as it was under the presumptive sentencing scheme.

Because aggravating circumstances no longer "enhance" a sentence in the manner Harper suggests, we cannot say that Attorney's McGrath's performance was deficient for failing to advance this argument.

13

*B. Failure to Cogently Argue Inappropriate Sentence*

Finally, Harper argues that Attorney McGrath was ineffective for failing to cogently argue that Harper's sentence was inappropriate. Both Harper and the State appear to agree that Attorney McGrath's performance in arguing Harper's sentence was deficient. However, we must address whether Harper was prejudiced by Attorney McGrath's performance.

Rule 7(B) of the Indiana Rules of Appellate Procedure gives this Court the power to revise an inappropriate sentence in light of the nature of the offense and character of the offender, giving due consideration to the trial court's decision. The defendant must persuade us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Under Rule 7(B), we seek "to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Whether a sentence is inappropriate ultimately depends upon "the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Id.* at 1224.

Harper contends that a review of his character reveals "a non-violent offender suffering from a drug addiction." (Harper's Br. 16). Our view of the record, however, shows that Harper is a drug dealer with a violent past. Harper has felony convictions for dealing marijuana, burglary, theft, and battery on a minor. He possessed over thirty times the amount of methamphetamine required to be convicted of possession with intent to

deal. Inside of his trailer were a stolen handgun and a video monitoring system. Nothing about Harper's character or the nature of the offense suggests that he should be viewed as an addict rather than a drug dealer. Accordingly, though Attorney McGrath's performance may have been deficient, Harper has not shown that he was prejudiced by the performance.

Because Harper has not shown that he was prejudiced by either trial or appellate counsel, we concluded that the post-conviction court did not err in denying Harper's petition for post-conviction relief.

Affirmed in part and remanded in part.

MATHIAS, J., and BRADFORD, J., concur.

15