## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 20 2015, 9:02 am

CLERK
of the supreme court,
court of appeals and
tax court

---

ATTORNEYS FOR APPELLANT

Eric K. Koselke
Indianapolis, Indiana

John M. Christ
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Demetrius Buntin,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 20, 2015

Court of Appeals Case No.
70A01-1501-CR-20

Appeal from the Rush Superior Court

The Honorable Brian D. Hill, Judge

Trial Court Cause No. 70D01-1309-FA-628

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Demetrius Buntin (Buntin), appeals his conviction for Count I, dealing in cocaine, a Class A felony, Ind. Code § 35-48-4-1(b)(1) (2006); Count II, possession of cocaine in excess of three grams, a Class C felony, I.C. § 35-48-4-6(b)(1)(A) (2006); and Count III, possession of cocaine and a firearm, a Class C felony, I.C. § 35-48-4-6(b)(1)(B) (2006).

We affirm in part, reverse in part, and remand with instructions.

## ISSUES

Buntin raises two issue on appeal, which we restate as:

(1) Whether the trial court abused its discretion in admitting evidence that was seized during a warrantless search; and

(2) Whether double jeopardy protections were violated when Buntin was convicted of Class A felony dealing in cocaine, Class C felony possession of cocaine in excess of three grams, and Class C felony possession of cocaine and a firearm.

## FACTS AND PROCEDURAL HISTORY

On September 18, 2013, Kim Shearer (Shearer) contacted probation officer Joe Jarman (Officer Jarman) claiming that her landlord had stolen her prescription pain medicine. Although Officer Jarman was not Shearer's probation officer at the time, she considered him a friend. Because it was not in the scope of Officer Jarman's duties to investigate criminal reports, he passed on the information to Deputy Sheriff Douglas Keith (Deputy Sheriff Keith) of the

Rush County Sheriff's Department. Acting on the report, Deputy Sheriff Keith, accompanied by Jarman, went to Shearer's apartment in Manilla, Indiana, to investigate. While inside Shearer's apartment, her phone rang several times, but Shearer did not answer. Shearer was also nervous. When Deputy Sheriff Keith questioned Shearer as to who was calling, Shearer stated that it was an old friend called "Shorty," who was later identified as Buntin. (Transcript p. 194). Shearer informed Deputy Sheriff Keith that Buntin wanted to sell her some cocaine. Deputy Sheriff Keith instructed Shearer to answer Buntin's call and set up a meeting where she would buy an "eight-ball of cocaine"[1] and a gram of heroin. (Tr. p. 195). According to Shearer, Buntin stated that he had the cocaine on hand but he would have to make arrangements to get the heroin. Buntin informed Shearer that the price for the cocaine would be around $280, and the heroin would cost $90. Buntin was expected to drop off the drugs at Shearer's apartment.

[5] Deputy Sheriff Keith briefly left Shearer's residence to obtain some buy money. When he returned, a female officer searched Shearer and Shearer was given the buy money. Two officers remained inside Shearer's apartment. Undercover vehicles were parked at strategic locations in the parking lot so that Buntin would have to park at a certain location. Detective Alix Shaver (Detective Shaver) sat at a picnic table about thirty to forty feet away from where Buntin was expected to park when he arrived. Officer Jarman and Detective Randy

---

[1] An eight-ball is "3.4 grams" of cocaine. (Tr. p. 195).

Meek (Detective Meek) waited in a parked van across the street from Shearer's apartment building. Deputy Sheriff Keith waited at the Manilla Fire Station which was approximately 200 yards east of Shearer's residence. In addition, Police Chief Craig Tucker (Chief Tucker), Deputy Sheriff Joshua Brinson (Deputy Sheriff Brinson), and Deputy Sheriff Matt Hendricks (Deputy Sheriff Hendricks), waited along State Road 44, west of Manilla.

[6] Shearer called Buntin and asked what time he would arrive, and at some point, Buntin phoned Shearer back indicating that he was having trouble obtaining the heroin. The officers instructed Shearer to ask Buntin if he would make up the difference with cocaine. Buntin agreed and indicated that he was on his way. A short while later, Buntin called Shearer and stated that he was nearby. At around 6:40 p.m., Buntin pulled into the parking lot in front of Shearer's apartment in a black SUV. As Shearer approached Buntin's vehicle, she saw an adult male in the passenger's seat with a handgun on his lap and a three-year-old boy seated in the back seat. Shearer approached Buntin and gave him the buy money. In turn, Buntin retrieved the cocaine from the vehicle's door panel, weighed it on a digital scale, and handed it to Shearer. Detective Meek, who was inside the surveillance van across the street, recorded the whole transaction.

[7] Once Buntin's vehicle pulled out, Shearer walked to Detective Shaver who was still seated at the picnic table, and handed her the plastic bag containing the cocaine. Buntin's vehicle was stopped on State Road 44. Both Buntin and the male passenger were ordered to step out of the vehicle. They were subsequently

handcuffed and placed in separate police vehicles. The three-year-old boy was also removed from Buntin's vehicle and placed inside a police vehicle. Moments later, Deputy Sheriff Keith arrived at the scene and informed the officers that there might be narcotics in Buntin's vehicle. Deputy Sheriffs Brinson and Hendricks proceeded to search Buntin's vehicle, with Brinson searching the passenger's side and Hendricks on the driver's side.

[8] Upon opening the passenger door, Deputy Sheriff Brinson heard something metallic hit the ground and when he looked down, he saw several bullets lying on the ground. Deputy Sheriff Brinson also observed that the door panel was loose and when he pulled it back, he saw a Smith and Wesson 40 caliber semi-automatic pistol. In addition, a small plastic baggie fell to the ground, and subsequent testing revealed that it contained 2.87 grams of marijuana. Likewise with the driver's door, the panel was loose, and Deputy Sheriff Hendricks observed money protruding from in between the door panel. When he pulled back the driver's door panel, a lot of money and a small Crown Royal bag containing additional baggies fell to the ground. Deputy Sheriff Hendricks also found a digital scale in the pocket of the driver's side door. After the money, bullets, handgun, Crown Royal bag, and digital scale were removed from the vehicle and photographed, Buntin's vehicle was towed to the Rush County Sheriff's Department. Deputy Sheriff Keith subsequently applied for and obtained a search warrant. When the officers executed the warrant, they found three locked cell phones in the vehicle.

[9] On September 23, 2013, the State charged Buntin with Count I, a Class A felony dealing in cocaine, I.C. § 35-48-4-1(b)(1) (2006); Count II, a Class C felony possession of cocaine in excess of three grams, I.C. § 35-48-4-6(b)(1)(A) (2006); Count III, a Class C felony possession of cocaine and a firearm, I.C. § 35-48-4-6(b)(1)(B) (2006); Count IV, a Class A misdemeanor possession of marijuana, hash oil or hashish, I.C. § 35-48-4-11(1) (2013); Count V, a Class D felony receiving stolen property, I.C. § 35-43-4-2(b) (2009); and Count VI, a Class D felony neglect of a dependent, I.C. § 35-46-1-4(a)(1) (2013).[2] Prior to his trial, Buntin, through counsel, filed two motions: a motion to suppress the evidence from his vehicle search, and a motion to suppress the evidence pursuant to the search warrant. On November 17, 2014, the trial court held a suppression hearing and denied Buntin's motions. On November 21, 2014, the State dismissed Count V, a Class D felony receiving stolen property, and it subsequently renumbered the charges.

[10] Buntin's jury trial was held on November 24-25, 2014. At the close of the evidence, the jury found Buntin guilty of all charges with the exception of Count IV, possession of marijuana, hash oil or hashish. On December 22, 2014, the trial court held Buntin's sentencing hearing. As for Count I, Buntin received twenty-two years with eight years suspended to probation. On Counts II and III, Buntin received concurrent sentences of four years each. On Count

---

[2] Buntin does not challenge his conviction for neglect of a dependent, and we affirm that portion of the trial court's judgment.

V, the trial court sentenced Buntin to one and-one-half years. Buntin's sentences were to run consecutively.

Buntin now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Admission of the Evidence*

### A. *Standard of Review*

When a defendant challenges the propriety of a search following a completed trial, the issue is one of whether the trial court properly admitted the evidence. *Casady v. State*, 934 N.E.2d 1181, 1188 (Ind. Ct. App. 2010). We review a trial court's ruling on the admissibility of evidence "for abuse of [ ] discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." *Clark v. State*, 994 N.E.2d 252, 260 (Ind. 2013). "We consider the evidence most favorable to the trial court's decision and any uncontradicted evidence to the contrary." *Lee v. State*, 916 N.E.2d 706, 707 (Ind. Ct. App. 2009). When an appellant's challenge to the admission of evidence is based on the argument that the search or seizure of the evidence was unconstitutional, it raises a question of law, which we review de novo. *Guilmette v. State*, 14 N.E.3d 38, 41 (Ind. 2014). We will reverse only if we find the decision below "clearly against the logic and effect of the facts and circumstances." *Joyner v. State*, 678 N.E.2d 386, 390 (Ind. 1997). Finally, a trial court's evidentiary ruling will be upheld on appeal on any

legal basis that is sustainable in the record. *Matheny v. State*, 983 N.E.2d 672, 676 (Ind. Ct. App. 2013), *trans. denied*.

## B. *Propriety of the Vehicle Search*

[13]   Buntin argues that the search and seizure violated his rights under the Indiana Constitution. We note that the text of Article 1, Section 11 of the Indiana Constitution is identical to the Fourth Amendment, but the two provisions have been given somewhat different interpretations. *State v. Hobbs*, 933 N.E.2d 1281, 1287 (Ind. 2010). Conformity of a search under the Indiana Constitution turns on an evaluation of the "reasonableness" of the conduct of the law enforcement officers, not on the expectation of privacy commonly associated with Fourth Amendment analysis. *Id*. Relevant considerations in evaluating reasonableness of a search under all the circumstances include the degree to which the search or seizure disrupts the suspect's normal activities, and those facts and observations that support the officer's decision to initiate the search or seizure. *Id*.

[14]   Although there may well be other relevant considerations under the circumstances, the reasonableness of a search or seizure generally turns on a balance of: (1) the degree of concern, suspicion, or knowledge that a violation has occurred; (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities; and (3) the extent of law enforcement needs. *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005). We consider each of these factors in turn.

[15]     Considering the balancing of the non-exclusive factors identified in *Litchfield*, we conclude that the interior search of Buntin's vehicle was reasonable under the circumstances. First, there was a significant "degree of concern, suspicion, or knowledge that a violation has occurred"—dealing in cocaine. *Id.* From the earlier controlled drug buy and surveillance efforts, the police had ample reason to believe that Buntin's vehicle contained illegal drugs. The information known to police clearly related to the vehicle being searched, and there were significant indicators that Buntin's vehicle contained contraband.

[16]     Second, the search minimally intruded onto Buntin's ordinary activities in view of the compelling nature of the evidence indicating the presence of contraband in Buntin's vehicle. The record shows that once Deputy Sheriff Brinson opened the passenger door, bullets fell to the ground. At that point, the scope of the search became more invasive, but the officers had an even higher degree of confidence that the vehicle contained evidence of a criminal offense. When Deputy Sheriff Brinson pulled back the loosely fastened passenger door panel, he saw a gun. On the driver's side, Deputy Sheriff Hendricks opened the door and saw money protruding from in between the door panels. When he pulled it back, a lot of money and a Crown Royal Bag containing additional baggies fell to the ground. Also, the weighing scale was visible in the driver's door pocket.

[17]     Finally, we find the extent of law enforcement needs to be strong. Buntin was a drug dealer and had just sold drugs to Shearer. As such, there was an abundant reason to believe that Buntin was in possession of additional drugs in the vehicle along with the buy money that Shearer had paid for the cocaine.

[18] Under the totality of the circumstances, we conclude that the officers' action were reasonable and that Buntin's rights under Article I, Section 11 of the Indiana Constitution were not violated. Further, we conclude that the trial court did not abuse its discretion in admitting evidence seized as a result of the warrantless search.

## II. *Double Jeopardy*

[19] Here, Buntin first argues his conviction and subsequent sentence for both Count I and II, Class A felony dealing in cocaine, and Class C felony possession of cocaine in excess of three grams, violate the Indiana Constitution's prohibition against double jeopardy. Also, Buntin argues that his convictions for both Counts I and III, Class A dealing in cocaine and Class C possession of cocaine and a firearm, respectively, violate double jeopardy principles. The State concedes and we agree.

[20] Article I, Section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." We determine whether convictions violate this clause by following the two-part test established in *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999). First, we evaluate whether the statutory elements of the crimes are the same. *Goldberry v. State*, 821 N.E.2d 447, 458 (Ind. Ct. App. 2005). Then, we evaluate whether the actual evidence used to convict the defendant of the two crimes is the same. *Id*.

[21] In *Harrison v. State*, 901 N.E.2d 635, 643-44 (Ind. Ct. App. 2009), we concluded that the defendant's conviction for possession of cocaine was barred by double

jeopardy because the same cocaine was used to support the defendant's dealing and possession convictions. In reaching this conclusion, we noted that the Indiana supreme court has held that "where the same cocaine supports both possession of cocaine pursuant to Indiana Code Section 35-48-4-6 and dealing in cocaine pursuant to Indiana Code Section 35-48-4-1, possession of cocaine is a lesser included offense of dealing in cocaine." *Id.* (citing *Hardister v. State*, 849 N.E.2d 563, 575 (Ind. 2006); *see Mason v. State*, 532 N.E.2d 1169, 1172 (Ind.1989)). Thus, Buntin may not be convicted and sentenced on both the greater and lesser offenses. Accordingly, we vacate Buntin's conviction for Count II, possession of cocaine in excess of three grams.

[22] With regards to Buntin's convictions for both Count I and III, Class A felony dealing in cocaine, and Class C felony possession of cocaine and a firearm, *Hardister* is directly on point. The Indiana supreme court in that case held that Class C felony possession of cocaine and a firearm is a lesser-included offense of a Class A felony dealing in cocaine if both crimes are based upon the same cocaine. 849 N.E.2d 563, 574-76. As such, the conviction for the lesser-included offense cannot stand. *Id.* Here, the State does not dispute that Buntin's conviction for Counts I and III were based upon the same cocaine, so that Count III is a lesser-included offense of Count I, and Count III must be vacated.

[23] Accordingly, we reverse in part and remand to the trial court with instructions to vacate Buntin's conviction and sentences for Counts II and III. However, Buntin's conviction for Class A felony dealing in cocaine remains.

## CONCLUSION

Based on the foregoing, we concluded that: (1) the search challenged in this case was not unreasonable and thus it did not violate Article 1, Section 11 of the Indiana Constitution; and (2) we affirm Buntin's conviction for his Class A felony offense, but we reverse in part and remand to the trial court with instructions to vacate Buntin's convictions and sentences for Counts II and III.

Affirmed in part, reversed in part, and remanded with instructions.

Friedlander, J. and Brown, J. concur